IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ASHLEY MARIE MURRAY**                                       **PLAINTIFF**

**V.**                         **No. 4:21-CV-00057-ERE**

**COMMISSIONER OF SOCIAL SECURITY**                **DEFENDANT**

## ORDER

Plaintiff Ashley Murray appeals the final decision of the Commissioner of the Social Security Administration denying her Title II application for disability insurance benefits. For reasons set out below, the Commissioner's decision is AFFIRMED.

## I.    BACKGROUND

On July 9, 2017, Ms. Murray filed for benefits due to anxiety, depression, and epilepsy. *Tr. 196, 233*.

Ms. Murray's applications were denied initially and upon reconsideration. At Ms. Murray's request, an administrative law judge ("ALJ") held a hearing on February 28, 2019, where she appeared with her lawyer, and the ALJ heard testimony from Ms. Murray and a vocational expert ("VE"). *Tr. 34-77.* The ALJ issued a decision on April 28, 2020 finding that Ms. Murray was not disabled. *Tr. 15-28.* The Appeals Council denied Ms. Murray's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-4.*

1

Ms. Murray, who was 23 years old at the time of the hearing, has some college education and past relevant work experience as a nurse assistant, hotel clerk, customer complaint clerk, and cake decorator. *Tr. 27, 40, 42, 72, 213.*

## II.   THE ALJ'S DECISION[1]

The ALJ found that Ms. Murray, who has not engaged in substantial gainful activity since July 9, 2017, has the following severe impairments: seizure disorder/pseudoseizures; insomnia; major depressive disorder; generalized anxiety disorder; panic disorder without agoraphobia; unspecified personality disorder; and posttraumatic stress disorder ("PTSD"). *Tr. 18.* However, the ALJ found that Ms. Murray did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ found that Ms. Murray has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: (1) she is unable to climb ladders, ropes or scaffolds; (2) she must avoid all exposure to hazard and driving; (3) she can perform work where interpersonal contact is only incidental to the work performed, the complexity of

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g).

tasks is learned and performed by rote with few variables and little use of judgment, and the required supervision is simple, direct, and concrete. *Tr. 19.*

The VE testified that jobs available with these limitations included linen room attendant, dining room attendant, small products assembler, price marker, and circuit board assembler. *Tr. 72-73.* The ALJ determined that Ms. Murray could perform a significant number of jobs existing in the national economy and found she was not disabled. *Tr. 27-28.*

## III.   DISCUSSION

### A.   Standard of Review

The Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial

evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B.    Ms. Murray's Arguments for Reversal

Ms. Murray challenges the ALJ's finding that her claims concerning the intensity, persistence, and limiting effects of her impairments were "not entirely consistent" with the evidence. *Doc. 15 at 5 (citing Tr. 24)*. The Court agrees that there is evidence to support Ms. Murray's claims. However, the ALJ must be affirmed if there is substantial evidence on the record as a whole to support his findings. Such evidence exists in this case.

"When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). An ALJ does not need to explicitly discuss each of these "*Polaski* factors," and can reject complaints which are inconsistent with the evidence as a whole. *Id*. A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's

testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

After a comprehensive summary of Ms. Murray's medical history, the ALJ noted that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record and generally do not support the alleged loss of functioning." *Tr. 24*. The following evidence supports that finding.

Ms. Murray experienced her first seizure, as an adult, in July 2017. *Tr. 381*. In December 2017, she underwent a mental evaluation and her husband claimed that she had over 400 seizures between July and December 2017. *Tr. 488*. However, MRI and EEG results came back negative or unremarkable[2] *(Tr. 408, 423, 426, 433, 441, 450, 475)*, and medical notes refer to her condition as "questionable seizure disorder," "seizure-like spells," and "pseudoseizures." *Tr. 402. 406, 423, 426.* The notes indicate that the seizures or convulsions appear to be related to past trauma, rather than epilepsy, since the "onset of paternal abuse correlates with seizures." *Tr. 435, 437, 442.*

Ms. Murray spent a few days in-patient therapy in September 2017 where medication helped with her panic attacks and she did not have excessive anxiety. *Tr.*

---

[2] Ms. Murray testified that she has grand mal and petit mal seizures, but that statement is inconsistent with the record. *Tr. 54*.

*478*. Until that time, she had received no psychiatric treatment to address her history of sexual abuse, which doctors believed triggered her mental health conditions. *Tr. 439*.

Medical providers recommended individual therapy for Ms. Murray in May 2018. *Tr. 565.* However, notes from August 2018 indicate that Ms. Murray had not attended individual therapy sessions since May 2018: "Ashely failed to return for services. She was last seen in the clinic 5/18." *Tr. 557.*

In late September 2018, Ms. Murray sought treatment at Ozark Guidance, where a therapist repeatedly noted "good progress." *Tr. 596, 606.* However, Ms. Murray did not attend counseling sessions from October 16, 2018 until December 3, 2018, where she appeared for an appointment and reported that she had been out of medication for a month. *Tr. 608.* Ms. Murray relayed that when she "was on the medication," she was "doing much better," and she denied any adverse effects from medication. *Id.*

At a December 20, 2018 visit, Ms. Murray reported that her depression was better and she had not recently had a seizure. *Tr. 614.* In January 2019, she reported that she had consistently been taking her medication and that there was "significant improvement most days," and her progress notes stated: the "[c]urrent [medication] regimen is efficacious." *Tr. 616, 619.*

6

On April 30, 2019, therapist notes documented that Ms. Murray was experiencing significant symptoms and an angry mood. *Tr. 622-623.* Still, there was "good progress" and "no revisions indicated at this time." *Tr. 623.*

Although the record shows that Ms. Murray had ups and downs in 2019, her medical records repeatedly indicated "good progress" and improvement of her anxiety symptoms. *Tr. 626, 629, 632, 641.* Additionally, there was no mention of seizures for quite some time. "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

"A claimant who fails to follow medical advice without good reason is not entitled to disability benefits." *Kirksey v. Soc. Sec. Admin., Com'r*, No. 3:14-CV-176-DPM-JTR, 2015 WL 2152673, at *3 (E.D. Ark. Apr. 27, 2015) (citing *Tome v. Schweiker*, 724 F.2d 711, 713–14 (8th Cir. 1984)). Ms. Murray failed to attend therapy sessions from May to August 2018, October to December 2019, and she missed two appointments in July 2019. *Tr. 557, 641.* As mentioned above, she ran out of medications at one point. *Tr. 608.*

Inconsistent reports of daily activity also weigh against the credibility of Ms. Murray's claims. For example, she reported that she was unable to parent her kids, perform household duties, and had not left the house in quite a while. *Tr. 64, 567.* However, she told medical providers that she spent her days taking care of her

children and doing housework, had been "getting out of the house more," tended to activities of daily living, attended college full-time online, and was "making a garden and working outside." *Tr. 475, 600, 616, 626, 641.* Ms. Murray's hearing testimony that she had not experienced improvement is also inconsistent, as set out by the record evidence of improvement mentioned above. *Tr. 53-54.* The ALJ applied the proper legal standards in evaluating Ms. Murray's subjective complaints and articulated several valid reasons for discounting her credibility. Accordingly, the Court must defer to those findings.

Clearly, there is evidence that Ms. Murray suffers from several mental health conditions. However, the question is whether the ALJ's final decision is supported by substantial evidence on the record as a whole. It was here.

## IV.    CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision. There is no legal error. Accordingly, Ms. Murray's appeal is DENIED and judgment is entered for the Commissioner. The Clerk of Court is directed to close the case.

IT IS SO ORDERED this 22nd day of November, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

8